Dear Mr. Butler:
This is in response to your request for an opinion concerning the following question:
 In view of the Missouri prohibition against branch banking (Section 362.105, RSMo 1969) which has been incorporated into the National Banking Act (12 U.S.C. § 36), may a national bank authorized to do business and operating in the State of Missouri enter into a contract with each of several correspondent banks, some of which are located outside of the city and county or state in which the national bank maintains its main banking house, under which contract the correspondent bank agrees to buy an automatic teller machine, install it on its own premises, and permit any person who is a customer of the national bank and holder of an encoded plastic card evidencing accounts held at the national bank to use such card in such automatic teller machine to effect cash withdrawals from a checking account at the customer's bank, transfers from a savings account to a checking account at the customer's bank, transfers from a checking account to a savings account at the customer's bank, transfers from a Master Charge line of credit to a checking account and cash withdrawals from a Master Charge line of credit at the customer's bank and under which contract the national bank agrees to permit such machines to be connected to its computer and to perform data processing services for the correspondent banks including the storage and transmission of data necessary for the efficient operation and coordination of all automatic teller machines connected to the system?
Your opinion request details many facts concerning the contractual arrangement between United Missouri Bank of Kansas City, a national banking organization, and its correspondent bank which uses the "ultra" machine. We will detail these facts verbatim as they appear in your opinion request. They are:
 United Missouri Bank of Kansas City, N. A., is a national banking association organized and doing business in Kansas City, Missouri. Virtually 100 percent of its stock is owned by a major Missouri bank holding company, United Missouri Bancshares, Inc., Tenth and Grand Avenue, Kansas City, Missouri 64141. The same holding company owns virtually all of the stock of nineteen other Missouri banking corporations. United Missouri Bank of Kansas City, N. A. is by far the largest of the banks owned by the holding company and is sometimes therefore referred to as its lead bank.
 The lead bank has obtained the right and license to the use of the name "Ultra" in connection with automatic teller machines and encoded plastic cards issued to activate such machines. It has entered into contracts with seven other banks located in the Kansas City metropolitan area by which it has authorized those banks, referred to as correspondent banks, to use the Ultra name in connection with the automatic teller machines installed on the premises of such correspondent banks. Five of the seven banks are owned by the same holding company as the lead bank. One of the correspondent banks is located in Overland Park, Kansas. The contracts have resulted in a network of automatic teller machines operating at fifteen separate locations but connected to the same central computer owned by the lead bank. Three of the locations are premises owned by the lead bank.
 The contract referred to gives the correspondent bank the right to use the name Ultra in connection with the automatic teller machines purchased or leased by the correspondent bank and the cards issued to its customers to permit them to use such machine. The correspondent agrees to permit access to its automatic teller machine to the customers of the lead bank and all other banks which have signed a similar contract with the lead bank. The Ultra card activates the Ultra machines and permits the holder of the card to draw cash from his checking account, transfer money from his savings account to his checking account, transfer money from his checking account to his savings account, request information concerning his accounts, withdraw cash pursuant to a master charge line of credit and obtain a transfer of funds from his master charge line of credit to his checking account. Therefore, a customer of the lead bank who holds an Ultra card issued by the lead bank may effect such a transaction at any of the fifteen locations referred to above. Each Ultra machine is `on line' with the lead bank's computer. Thus, a withdrawal of cash at one Ultra machine will immediately be reflected in the computer record of the customer's account and the reduced balance of the account will be given if the customer subsequently verifies his account balance at any of the other Ultra machines.
 Each correspondent bank either owns or leases the machine operated on its premises and services the machine by resupplying it with cash and "acknowledgement" forms as needed. With respect to the cash withdrawal capability of the machines, each correspondent bank agrees to indemnify and hold harmless the customer's bank of record from any liability and expenses which the bank of record may incur resulting from unauthorized use of their customer's transaction cards. Therefore, if a customer of the lead bank withdraws funds from a machine located on the premises of a correspondent bank at a time when the customer's account at the lead bank contains insufficient funds to support the transaction, the correspondent bank is held responsible for the deficiency.
 The question whether the operation of the Ultra system is legal arises because the National Banking Act imposes the same limits on national banks establishing and operating branches as is imposed on state banks by the law of the state in which the national bank is located. (See 12 U.S.C. § 36; 362.105, RSMo 1969; 362.107, RSMo Supp.; 362.108, RSMo Supp.)
United Missouri Bank of Kansas City, which is offering the ultra system, has expressed its views on this subject. It points out in summary that each individual bank purchased and now owns and operates and maintains its own ultra machine. Each individual ultra machine is carried on the books of the bank which owns it as an asset. No other bank has an ownership interest in such machine. No bank pays any moneys to any other bank for use by its customers of ultra machines located at other banks.
Additionally, it is clear that the functions performed through the teller machine are essentially traditional banking functions that have long been performed through human tellers of banks for customers of other banks. Many activities affecting customers of one bank are done by and through another bank. Examples are wire transfer of funds and the cashing of checks.
As indicated by the facts presented by the Commissioner's office and United Missouri Bank of Kansas City, United Missouri Bank of Kansas City is a national bank. The branch banking laws for national banks appear in 12 U.S.C. § 36. The National Branch Banking Act, as it refers to branch banking by national banks, refers to and incorporates state banking laws concerning branch banking. Missouri laws on branch banks appear in §§ 362.105 and 362.107, RSMo 1978. Section 362.105, RSMo 1978, prohibits branch banking. Section362.107, RSMo 1978, is an exception to that prohibition.
Section 362.105, RSMo 1978, apparently is the only pertinent reference to branch banking in the Missouri banking code. The term branch is not otherwise defined in the state law. Section362.107, RSMo 1978, sets out in detail permission to establish up to two facilities in the same city and county in which the main banking house is located. Section 362.108, RSMo 1978, is a statute which applies to second, third, and fourth class counties and permits a bank to establish one separate facility in another town if certain criteria is met.
Additionally, § 362.105, RSMo 1978, provides for the powers and authority of banks and trust companies under the laws of this state. Section 362.105(11), RSMo 1978, provides that a bank may contract with another bank, bank service corporation, partnership, corporation, association, or person, within or without the state, to render certain data processing services. It further provides:
 [H]owever, that this subdivision shall not be deemed to authorize a bank or trust company to provide any customer service through any system of electronic funds transfer at places other than bank premises;
After reviewing the applicable contract and considering the present law, it is the view of this office that the ultra machines are performing traditional banking functions which are generally not prohibited as branch banking when considering the nature of each function performed by the machine. As will be discussed in this opinion, the only serious question we have with regard to the function of the machine as constituting branch banking in this state relates to the transfer of money by a customer from his checking account to his savings account. Apparently, the United States Court of Appeals, District of Columbia, has held that the transfer from interest bearing time deposit savings accounts to non-interest bearing demand checking accounts is not authorized by relevant federal law. However, the court has stayed its order until January 1, 1980, in the expectation that Congress will pass legislation concerning this matter. American Bankers Association v. Connell, 768 Fed. Banking L. Rep. (CCH) ¶ 97785 (June 21, 1979). All other functions are not questioned by this opinion, namely, cash withdrawals charged to checking account, Master Charge transactions, cash loans, and loan deposit to checking account. It is our understanding that the machines do not receive deposits from customers of United Missouri Bank of Kansas City.
The Commissioner of Finance has submitted through his counsel a number of federal cases which he believes are authority for the proposition that the ultra bank constitutes branch banking in this state. We have reviewed those citations and believe that the federal cases on this subject are not helpful in that the cases involve a national bank placing electronic teller machines in free standing locations away from the bank's premises, or in a store, factory, or office, also away from the premises of any bank. In none of these cases did the bank of which the electronic teller machine was alleged to have been a branch locate that machine on the premises of another bank.
In 1967, the Missouri legislature made two changes to § 362.105, RSMo 1978. First, in subsection (1) it added reference to § 362.107, RSMo 1978, so that the last part of the subsection stated:
 [N]o bank or trust company shall maintain in this state a branch bank or trust company, or receive deposits or pay checks except in its own banking house or as provided in section 362.107;
At the same time, it added subsection (11) which now states:
 1. Every bank and trust company created under the laws of this state may:
* * *
 (11) Contract with another bank or trust company, . . . within or without the state, to render or receive services such as check and deposit sorting and posting, computation and posting of interest and other credits and charges, preparation and mailing of checks, statements, notices, and similar items, or any other clerical, bookkeeping, accounting, statistical, or similar services, or the storage, transmitting or processing of any information or data; . . . provided, however, that this subdivision shall not be deemed to authorize a bank or trust company to provide any customer services through any system of electronic funds transfer at places other than bank premises;
The proviso at the end of subsection (11) clearly indicates that the Missouri legislature recognized that electronic funds transfers do take place between banks and wanted to make clear that this section did not expand the practice to non-bank premises. It should be noted that the phrase "or the storage, transmitting or processing of any information or data" was inserted by amendment subsequent to the initial passage of the section. Thus, it would appear that the legislature was specifically authorizing electronic data processing interlocks necessary for the operation of automatic teller machines such as the ultra machine. Of course, each transaction involving the ultra machine does involve the storage, transmitting, or processing of information or data.
Further, the language in § 362.105(11), RSMo 1978, supports the analogy contended by United Missouri Bank of Kansas City that the ultra bank is similar to the use of the telephone by a customer of one bank at another bank. Certainly, a request by a customer for information on his balance in either his checking or savings account would be covered by the language cited above. Because a customer can transfer money from his checking account to his savings account by telephone, he essentially could do the same thing by use of the ultra machine but for the fact that the United States Court of Appeals, District of Columbia, has taken issue with this particular function of the machine. Obviously, this function can be removed from the machine without interfering with the other appropriate functions that the machine performs.
Moreover, we find no provision in the banking laws of this state which prohibit ultra machines. We do find a very positive approach by the Missouri legislature to insure that such automatic tellers are kept on bank premises and are not placed in supermarkets, stores, or offices. We also find, as a result of the federal cases cited by the Commissioner's office, that ownership of the ultra machine in another bank by United Missouri Bank of Kansas City would constitute branch banking contrary to the laws of this state.
Finally, we note that some correspondent banks with the ultra machines are located outside the state of Missouri. While the office does not pass on the propriety of a national bank using such equipment across state line since such matter may be a matter of federal jurisdiction, state banks do not possess the authority to cross state lines for the purpose of servicing their customers with automated teller services such as ultra.
CONCLUSION
It is the opinion of this office that under the contract and the arrangement presently existing in connection with the ultra machines, as described in the facts set out above, the use of such machines does not constitute branch banking. This office defers any judgment as to the use of the machine for the transfer of money from a customer's checking account to his savings account until that matter is resolved in the appropriate forum. We recommend, however, that that function be eliminated from the machine until such time as the issues concerning that function have been fully and properly resolved. Further, we do not offer an opinion concerning interstate use of the ultra machine.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Terry C. Allen.
Very truly yours,
 JOHN ASHCROFT Attorney General